# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 04-1967

———————

| | | |
|---|---|---|
| United Fire & Casualty Insurance Company, | * * * | |
| Plaintiff - Appellee, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Paul Garvey, | * * | |
| Defendant - Appellant, | * * | |
| Fenton, L.L.C., | * * | |
| Intervenor - Appellant. | * | |

———————

Submitted: April 14, 2005
Filed: August 18, 2005

———————

Before LOKEN, Chief Judge, FAGG, and BYE, Circuit Judges.

———————

BYE, Circuit Judge.

This is an appeal from the district court's order granting judgment as a matter of law (JAML) following a jury verdict in favor of Paul Garvey and Fenton, L.L.C. (Fenton). The district court held United Fire & Casualty Insurance Company (United Fire) had no duty to indemnify Paul, who was acting as the agent of James and Beverly Garvey, for a fire which destroyed property they owned. We reverse.

I

In 1995, James and Beverly purchased a piece of residential property. Paul, their son, was instructed by his father to obtain insurance coverage for the property. Paul called Dan Hebbeln, the family's insurance agent, and told him his parents had recently purchased a piece of property and needed it insured. Paul had previously obtained insurance through Hebbeln for other properties owned by his parents, and each time told him he was acting on their behalf. Hebbeln completed an application which Paul reviewed and signed, and United Fire issued a policy of insurance listing Paul Garvey as the insured.

On February 28, 1997, the residence was destroyed by fire. Paul reported the loss to Hebbeln who notified United Fire. Shortly thereafter, Fenton exercised an option to buy the property from James and Beverly and took an assignment for the insurance proceeds. Thereafter, United Fire denied the claim arguing, among other things, Paul, as the named insured, had no insurable interest in the property. On March 15, 1999, United Fire filed an action for declaratory relief arguing it owed no duty to indemnify Paul or his parents. Fenton later intervened. United Fire moved for summary judgment and the district court granted the motion, holding Paul had no insurable interest in the property. On appeal, we held Paul had no insurable interest, but reversed and remanded for further proceedings to determine if Paul was acting as an agent for his parents when he obtained the policy. United Fire and Cas. Ins. Co. v. Garvey, Nos. 00-3847, 00-3848, 2001 WL 1167810, at *1 (8th Cir. October 4, 2001) (per curiam) (unpublished).

Once back in the district court, United Fire again moved for summary judgment arguing under Missouri law an agent cannot obtain insurance on behalf of an undisclosed principal. The district court granted summary judgment finding Paul had never disclosed he was acting for his parents, and an agent may not obtain insurance coverage for an undisclosed principal. On appeal, Paul and Fenton argued the district

-2-

court erred when it concluded James and Beverly were undisclosed principals. Once again we reversed, holding United Fire could avoid the contract of insurance if Paul failed to disclose he was acting as an agent for his parents, but there was a genuine issue of material fact as to whether he disclosed the agency relationship when he obtained coverage. United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 414 (8th Cir. 2003).

Following the second remand, a jury trial was held. The jury found Paul disclosed to Hebbeln he was acting as an agent for his parents at the time he obtained the insurance. The jury further found Hebbeln was acting as an agent for United Fire when he completed the application and submitted it to United Fire. The jury awarded $138,000 for the loss of the dwelling and $2,113.60 for loss of personal property. Thereafter, United Fire moved for JAML arguing even though the jury found Paul disclosed his agency, the evidence was insufficient as a matter of law to show Hebbeln was acting as United Fire's agent for purposes of imputing knowledge of the agency relationship to the insurance company. The district court agreed and granted JAML. The district court also held Paul and Fenton were barred from seeking to impute knowledge of the agency relationship because James and Beverly failed to examine the policy and notify United Fire it did not reflect their ownership interests in the property.

II

We review the district court's entry of judgment as a matter of law "in the light most favorable to the party who prevailed before the jury." City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 651 (8th Cir. 1989). Accordingly, we must

(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to

-3-

prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Pumps and Power Co. v. Southern States Indus., 787 F.2d 1252, 1258 (8th Cir. 1986) (quotation omitted).

We will not, however, give a party "the benefit of unreasonable inferences, or those at war with the undisputed facts." City of Omaha Employees Betterment Ass'n, 883 F.2d at 651. "A mere scintilla of evidence is inadequate to support a verdict," and judgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict. Id. at 651-52.

United Fire argues Hebbeln, as a matter of law, was acting as Paul's agent when he completed the application, and therefore, his knowledge of the agency relationship between Paul and his parents cannot be imputed to United Fire. Conversely, Paul and Fenton argue there was sufficient evidence for the jury to conclude Hebbeln was acting as United Fire's agent during the application process.

Under Missouri law, an insurance broker is one who, on behalf of the insured, shops around for insurance among multiple insurance companies. In such instances, the broker is acting as the agent of the insured. Mark Andy, Inc. v. Hartford Fire Ins. Co., 229 F.3d 710, 717 (8th Cir. 2000). Conversely, "[a] person delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent [of the insurer], and not a broker." Travelers Indem. Co. v. Beaty, 523 S.W.2d 534, 537 (Mo. Ct. App. 1975) (quoting 16 Appleman, Insurance Law and Practice, § 8725, p. 259). Absent special conditions or circumstances suggesting otherwise, the presumption is a broker is the agent of the insured, Secura Ins. Co. v. Saunders, 227 F.3d 1077, 1080 (8th Cir. 2000), and any mistakes made by the broker are attributable to the insured, Mark Andy, Inc., 229 F.3d at 717. "[T]he acts of one procuring insurance as the agent of the insurer [however] are imputable

to [the insurer]." <u>Beaty</u>, 523 S.W.2d at 537 (quoting 16 Appleman, Insurance Law and Practice, § 8725, p. 259). "Whether a so-called 'independent broker' as distinguished from one who sells only for one company is the agent of the insurer or the insured depends on the facts of a particular situation." <u>Kelley v. Shelter Mut. Ins. Co.</u>, 748 S.W.2d 54, 57 (Mo. Ct. App. 1988).

The facts of this case, viewed in the light most favorable to the verdict, <u>Pumps and Power Co.</u>, 787 F.2d at 1258, demonstrate the following. The Agency Agreement (Agreement) between Hebbeln Financial Services, Inc., and United Fire states: "The Company [United Fire] hereby appoints the Agent [Hebbeln], with the authority to *solicit* applications for insurance." App. at 001558b (emphasis supplied). The Agreement further indicates Hebbeln agreed: "To *solicit* in the name of the Company specified applications of insurance." App. at 001558d (emphasis supplied). At trial, Hebbeln testified the language of the Agreement imposed upon him a duty to solicit first on behalf of United Fire if it offered the coverage requested by a customer.

> Q: And it says here under "Conduct of the Agency Business," the first line says that you have a "duty to solicit in the name of the company specified applications of insurance." Do you see that?
>
> * * *
>
> A: Yes.
>
> Q: That means if it was within the kind of insurance you're contracted to sell, you've got a duty to solicit it in the name of the company those kinds of policies. True?
>
> A: True.
>
> * * *

Q: And so if you get a customer that comes in and says, "I need this kind of building covered," and you reach the conclusion as an insurance agent that what he needs is a fire policy, which [sic] one of the lines that you write for United Fire and Casualty, you've got a duty to solicit that policy from United Fire and Casualty. True?

A: A duty to solicit that policy from United Fire and Casualty?

Q: That's what it says here. It says, "to solicit in the name of the company specific applications of insurance." Those are for the lines you write; correct?

A: A duty for United Fire and Casualty?

Q: That's right. Your duties for United Fire and Casualty is to sell their policies if you can. True?

A: Yes.

Tr. at 270-71.

Hebbeln also testified the Agreement authorized him to solicit, bind, and execute contracts of insurance on behalf of United Fire.

Q: If we go to the next page, one of the things that it says . . . "when this agreement is terminated under paragraph one of this clause, the following conditions will apply: The agent's authority to solicit, bind, or execute contracts of insurance will cease as of the effective date [of] termination of this agreement. Did I read that correctly?

A: Yes.

Q: Which means that at any time before termination you do have the power to solicit, bind, and execute contracts of insurance for this company. True?

-6-

A: Yeah.  Per the – per the contract.  Yes.  I have never executed an actual policy, but I have solicited and bound coverage and requested that the policy be –

Q: I mean that's a power, whether or not you have actually done it.  According to this contract –

A: True.

Q:  – you have got the power to solicit policies, bind policies, and execute contracts of insurance.  That's what it says; right?

A: Yes, it does.

Id. at 278-79.

Thereafter, the jury was instructed to decide whether Hebbeln was acting as Paul's agent or United Fire's agent at the time he took the information for the application and transmitted it to United Fire.  In deciding the issue, the jury was told to

[C]onsider that an insurance broker may be the agent of the insurance company for some purposes, and the agent of the insured for others.  Unless some special conditions or circumstances indicate that the opposite is true, the presumption exists that a broker is the agent of the insured.  Therefore, the broker may not be converted to an agent of the insurance company for the purpose of receipt of information for the application for insurance and transmission to the insurance company without some action on the insurance company's part, *or the existence of some facts from which the broker's authority to represent the insurance company for the purpose of receipt of information for the application for insurance and transmission to the company may be fairly inferred.*

-7-

App. at 001566 (emphasis supplied).[1]

Based on Hebbeln's testimony that he had a duty to sell United Fire policies first, we find the jury could reasonably conclude he was not acting as a broker when he sold United Fire policies. Instead, the jury could reasonably conclude Hebbeln first only looked to United Fire, and in such instances he was acting as its agent, not the insured's. Shelter Mut. Ins. Co., 748 S.W.2d at 58 (holding a person who solicits insurance for a particular insurance company and none others is an agent, not a broker); cf. Schimmel Fur Co. v. Am. Indem. Co., 440 S.W.2d 932, 938 (Mo. 1969) (holding when an insurance broker is directed by the insured to procure insurance from a particular insurer, the broker acts as agent for the insurer, not the insured).

Nonetheless, United Fire argues our decision in this case is controlled by Secura Ins. Co, where we held, although an insurance broker had a contractual relationship with Secura giving him the authority to solicit insurance for it, the agreement provided the broker was an independent contractor and did not create an employee/employer relationship. Accordingly, we concluded the general rule applied and the broker was acting as the agent of the insured. 227 F.3d at 1080 (applying Missouri law). Here, however, the agency agreement between Hebbeln and United Fire is distinguishable because, as Hebbeln testified, the agreement imposed an affirmative duty on him to solicit the coverage on behalf of United Fire if it was available. Based on this evidence, the jury could reasonably conclude Hebbeln was

---

[1]United Fire did not object to the substance of the jury instruction but did argue the issue should not have been submitted to the jury. We disagree. It is well-settled in Missouri this is an issue for the jury, Shelter Mut. Ins. Co., 748 S.W.2d at 57 ("Whether a so-called 'independent broker' as distinguished from one who sells only for one company is the agent of the insurer or the insured depends on the facts of a particular situation."), unless the undisputed facts demonstrate the issue should be decided as a matter of law, Mark Andy, Inc., 229 F.3d at 716-17.

-8-

precluded from shopping the coverage to other insurers, and was not acting as a broker.

United Fire also contends our decision today is dictated by Mark Andy, Inc. Again we disagree. In Mark Andy, Inc., the insured requested and received multiple quotes, through its broker, from several insurance companies, and thus, the broker was the agent of the insured. 229 F.3d at 717. United Fire argues Paul testified he anticipated Hebbeln would shop his coverage around to various companies, thereby proving Hebbeln was acting as a broker. The evidence on this point, however, was conflicting. Paul testified he expected Hebbeln to check with various companies, but his subjective expectations are not conclusive proof of what actually transpired. On the other hand, Hebbeln testified he shopped the coverage to other companies, but also testified he had a contractual duty to first place insurance with United Fire whenever possible. As arbiters of this dispute, we are not called upon to usurp the function of the jury by weighing, evaluating, or considering the credibility of this conflicting evidence. Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 345 (8th Cir. 1996). Rather, our task is to, after resolving direct factual conflicts in favor of Paul and Fenton, determine whether the evidence "would allow reasonable jurors to differ as to the conclusions that could be drawn." Pumps and Power Co., 787 F.2d at 1258. Having done so, we conclude there was sufficient evidence to support the jury's finding that Hebbeln was acting as United Fire's agent at the time he completed and transmitted the application.

United Fire's final argument is Paul and Fenton were precluded by the acceptance doctrine from disputing the terms of coverage as reflected in the policy.

Missouri imposes an affirmative duty on insureds to examine their policies promptly to determine whether they contain the terms agreed upon, and the failure to do so is deemed an acceptance of the policy as written. Secura Ins. Co., 227 F.3d at 1081. The district court concluded Paul had no insurable interest in the property and

because James and Beverly failed to examine the policy they did not discover their interests were not reflected.  Thus, they were precluded by the acceptance doctrine from contesting the terms of coverage as reflected in the policy.  We find this argument to be without merit.  Paul does not claim an insurable interest in the property.  Rather, the evidence viewed in the light most favorable to the verdict, shows he was acting as agent for his parents when he obtained the insurance.  By virtue of this agency relationship, James's and Beverly's interests in the property are reflected in the policy.

## III

The judgment of the district court is reversed and we remand with instructions to reinstate the jury verdict and enter judgment in favor of Paul and Fenton.

_____