Robert G. BELL, Gevodia Bell, Edward
L. Boni, and Patricia A. Boni,
Plaintiffs-Appellees,

v.

James O'LEARY, Defendant-Appellant.

No. 84–1146.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1984.

Decided Oct. 2, 1984.

---

Dowd & Dowd, P.C., Edward L. Dowd, St. Louis, Mo., for plaintiffs-appellees Boni.

Richard L. Geissal, Jr., St. Louis, Mo., and Marylou Calzaretta, Chicago, Ill., for plaintiffs-appellees Bell.

William B. England and Donald J. Sher, St. Louis, Mo., for defendant-appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The defendant appeals from the district court's judgment, 577 F.Supp. 1361, in favor of the plaintiffs. We affirm.

## I. Facts.

Between Dec. 29, 1976, and Jan. 14, 1977, the plaintiffs, Robert and Gevodia Bell, asked the defendant, James O'Leary, to obtain flood insurance on their behalf. O'Leary is an insurance broker. O'Leary filled out an application for insurance on the Bells' mobile home which was located in an unincorporated area of Lincoln County, Missouri. O'Leary submitted this application to Shelter Insurance Co. The application was accepted, and the Bells were issued an insurance policy on their home.

In March of 1978, O'Leary filled out an application for flood insurance on the mobile home of the other set of plaintiffs in this case, Edward and Patricia Boni. The Boni residence was also located in an unincorporated area of Lincoln County, Missouri. O'Leary submitted this application to Electronic Data Systems, Inc., (EDS). The application was accepted, and the Bonis were issued an insurance policy on their home.

Between 1968 and 1978, the National Flood Insurance Program (NFIP) was insured by the National Flood Insurers Association (NFIA)—a voluntary, unincorporated group of insurance companies—pursuant to an agreement with the Department of Housing and Urban Development (HUD). Under this agreement, the NFIA issued and serviced individual policies of flood insurance, and processed claims for losses. HUD was the underwriter for the program, and it determined which risks would be insured and the premiums to be paid for those risks. The agreement between NFIA and HUD expired on Dec. 31, 1977. Effective Jan. 1, 1978, HUD assumed complete administration of the NFIP, and became the sole insurer of all outstanding flood insurance policies. In addition, HUD assumed all servicing operations which had been performed previously by the NFIA and its servicing companies, such as EDS and Shelter. By an executive order issued April 1, 1979, operation of the NFIP was transferred to The Federal Emergency Management Agency (FEMA).

The Bells renewed their insurance policy in 1978, 1979, and 1980. The Bonis renewed their insurance policy in 1979. On April 11, 1979, a flood damaged both the Bell and Boni mobile homes. Thus, at the time of the flood, FEMA was the insurer that carried the risks on the plaintiffs' homes. The limit of coverage in the Bells' policy was $5,600.00. The limit of coverage in the Bonis' policy was $16,000.00. Both sets of plaintiffs alleged losses in excess of the amount of coverage provided by their policies.

Although the plaintiffs had been issued policies, FEMA denied their claims of loss because the policies had been issued erroneously. NFIP contends that its coverage does not extend to property located in unincorporated areas. *See* 44 C.F.R. § 59.22

(1983). This issue of coverage is not clearly set forth in § 59.22, though § 59.22(a)(4) on eligibility (does not refer to community) and requires "(4) a list of the incorporated communities within the applicants' boundaries." However, for the purposes of this case, we accept the parties stipulations that "subject property was located in an unincorporated area of Lincoln County which had not been approved for coverage by NFIP." According to the district court's findings, this fact had been published periodically in the Code of Federal Regulations. Because both the Bell and Boni homes were located in unapproved unincorporated areas, the plaintiffs were not eligible for insurance under NFIP.

The plaintiffs brought suit against Shelter Insurance Co., and O'Leary, seeking reimbursement for their losses. FEMA entered the action on a motion for substitution of party defendants, i.e., Shelter, and successfully removed the case to federal district court. The district court[1] decided the case on the stipulations of fact submitted by the parties. The court held that under the case of *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947), FEMA was not estopped to deny coverage of the plaintiff's property; the fact that property located in unapproved unincorporated areas was ineligible for insurance under NFIP had been published in the Code of Federal Regulations, and *Merrill* charged the plaintiffs with knowledge of that information. However, the district court held that, under a theory of negligence, O'Leary was liable to the plaintiffs for the full extent of coverage in the invalid policies; by failing to discover that the plaintiffs were ineligible for coverage under the NFIP, and to inform the plaintiffs of that fact, O'Leary had failed to act with the reasonable care, skill, and diligence required of an insurance broker. O'Leary appeals from this judgment.

**1.** The Honorable H. Kenneth Wangelin, United States District Court for the Eastern District of

## II. Discussion

### a. O'Leary's Negligence.

O'Leary argues that the district court erred in relying on *Merrill* for the finding that O'Leary had been negligent, and also erred in finding that O'Leary had been negligent at all. As to the first part of the argument, we do not think that the district court relied on *Merrill* in finding that O'Leary had been negligent. The district court simply noted that a finding of negligence was appropriate under—or consistent with—*Merrill*, and we agree with that proposition. *See id.* at 383, 383 n. 1, 68 S.Ct. at 2, 2 n. 1. As to the second part of O'Leary's argument, we simply disagree. We hold that an insurance broker who fails to determine whether a client is eligible for insurance coverage is negligent. The sole purpose of purchasing insurance is to afford coverage on the insured risks.

When an insurance broker agrees to obtain insurance for a client, with a view to earning a commission, the broker becomes the client's agent and owes a duty to the client to act with reasonable care, skill, and diligence. *Haeuber v. Can—Do, Inc., II*, 666 F.2d 275, 280 (5th Cir.1982), *quoting, Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La.1973); *Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d 650, 656 (3rd Cir.1968), *cert. denied*, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969), *quoting*, 16 J. Appleman, *Insurance Law & Practice* § 8841 at [171–82] (West 1981); *Boothe v. American Assurance Co.*, 327 So.2d 477, 481–82 (La.App.), *writ denied*, 330 So.2d 315 (La.1976), *quoting, Karam*, 281 So.2d at 730; *Zeff Distrib. Co. v. Aetna Casualty & Sur. Co.*, 389 S.W.2d 789, 795 (Mo.1965); *Hlavaty v. Kribs Ford, Inc.*, 622 S.W.2d 328, 330 (Mo.App.1981); *Barnes v. Metropolitan Life Ins. Co.*, 612 S.W.2d 786, 787 (Mo.App.1981), *quoting, Pittman v. Great Am. Life Ins. Co.*, 512 S.W.2d 857, 861 (Mo.App.1974); *Hall v. Charlton*, 447 S.W.2d 5, 9 (Mo.App.1969). If the broker is unable to obtain the insur-

Missouri.

ance, the broker has a duty to so notify the client. *Haeuber,* 666 F.2d at 280; *Boothe,* 327 So.2d at 481–82; *Zeff,* 389 S.W.2d at 795; 16 Appleman, *Insurance Law* § 8841 at 198–200. Failure to notify a client that insurance is not available will render the agent liable to the client for negligent breach of the agent's duty. *Barnes,* 612 S.W.2d at 787, *quoting, Pittman,* 512 S.W.2d at 861.

■ However, O'Leary argues that: the information was contained in the Code of Federal Regulations; the plaintiffs could have discovered this information; and he should not be charged with having knowledge superior to that of the plaintiffs. O'Leary's argument misses the point. O'Leary held himself out to the public as one who had superior knowledge of a specific area of business, insurance. As a professional, O'Leary is charged with the ability to do more than simply fill out application forms. He is charged with knowledge of his business, which includes an awareness of what facts render his clients ineligible for insurance coverage. *See Butler v. Scott,* 417 F.2d 471, 473 (10th Cir. 1969) ("It is the independent insurance agent to whom an insured looks and relies upon to acquire the requested coverage with a reliable company [which] can and will properly and promptly pay claims when due").

■ The plaintiffs relied on O'Leary's representation of himself as a competent insurance broker, and they called upon his expertise to locate precisely the type of information that O'Leary failed to locate. Having accepted the task, for pay, O'Leary cannot now be heard to disclaim responsibility for failure to perform the task with the requisite skill and diligence. Nor can O'Leary shift responsibility to the plaintiffs for their failure to locate the information by themselves when, by accepting the task of obtaining insurance for them, O'Leary expressly relieved the plaintiffs of that responsibility. Thus, we hold that by failing to discover that the plaintiffs were ineligible for coverage under the NFIP, and by failing to notify them of that fact, O'Leary was negligent.

### b. Proximate Cause.

O'Leary contends that because flood insurance was not obtainable from any other source, the plaintiffs would have suffered the monetary losses caused by the April flood regardless of his negligence. Thus, even if he was negligent, that negligence was not the proximate cause of plaintiff's damages.[2]

At the threshold we note that the unavailability of flood insurance from any source did not relieve O'Leary of the obligation to the plaintiffs to pursue their applications with diligence, and to inform his clients that the insurance was unobtainable. *Boothe,* 327 So.2d at 481. Further, O'Leary's failure to discover crucial information lulled the plaintiffs into believing that no further actions were necessary. In other words, by failing to discover the facts which would have prevented the mistaken belief by all that the plaintiffs were insured, O'Leary foreclosed the opportunity to consider other options that might have

**2.** O'Leary also argues that the trial court's decision on the issue of his negligence resulted in inconsistent findings: in relieving FEMA of liability, the trial court specifically held that the plaintiffs had failed to prove that FEMA's negligence was the proximate cause of their losses. We have no occasion to pass upon the propriety of the trial court's ruling in favor of FEMA because the plaintiffs have not appealed from that ruling. However, we note that the plaintiffs sued FEMA under a theory of estoppel, and sued O'Leary under negligence and breach of contract theories. These theories required different analyses. Further, the district court's analysis regarding the "detrimental reliance"

factor under the estoppel theory may be considered surplussage. The district court found that the plaintiffs failed to meet the first requirement of estoppel, that they were ignorant of their ineligibility for flood insurance, because *Merrill* charged the plaintiffs with constructive knowledge of their ineligibility. 332 U.S. at 384–85, 68 S.Ct. at 3–4. The district court did not need to go any further to justify relieving FEMA of liability. Finally, we note that *Merrill* itself establishes different analyses for suits, such as this one, brought against a federal agency and suits brought against a private carrier of insurance. *Id.* at 383, 383 n. 1, 68 S.Ct. at 2, 2 n. 1.

been available to the plaintiffs. "Obtaining flood insurance from some other source was not the only option left to plaintiffs had they been timely notified of noncoverage." *Id.* This is true particularly when one considers that the plaintiffs were trying to obtain insurance for mobile homes, property which could have been moved in order to meet eligibility requirements. However, whether the plaintiffs would have pursued other options is not the point. The point is that O'Leary's negligence precluded the necessity of considering options. *See id.* As noted in *Boothe*, "we must not speculate what measures the plaintiffs might have taken or not taken if they had been informed that they could not get flood insurance". As a result, the plaintiffs suffered monetary losses that they otherwise might not have incurred.

Thus, we hold that O'Leary was negligent in failing to discover the plaintiffs' ineligibility for flood insurance, and this negligence was the proximate cause of the losses the plaintiffs suffered. Accordingly, the judgment is affirmed.